The defendant and two others, Samuel P. Brittain and J. W. Brittain, of whom the latter died before trial, and a nol pros was entered as to the former, are charged with committing an affray, and mutually assaulting and beating each other.
The defendant, upon his plea of not guilty, was tried and convicted before the jury, at Fall Term, 1885, of Henderson Superior Court.
It was in evidence that one Few, the owner, had leased a store house in the town of Hendersonville to the said Samuel P., consisting of a front and rear room, and that himself and the defendant were interested as partners in a billiard table and bar, kept in the latter room.
A witness introduced for the State, W. D. Miller, testified as follows:
"I saw Samuel P. Brittain cross the street, and with his son J. W. Brittain, enter an adjacent drug store, come out, and go to the door of the store room, which he made an effort to break open. The *Page 782 
defendant, standing in front of the drug store, said to him, "Don't break the door open," to which Brittain replied with an oath, "I will do so." The defendant then passed into the drug store, and came out with his gun in his hand. Brittain forced the door open, and with his son, entered the room, the defendant closely following with his gun. (941) I heard words, apparently angry, within the room where the parties were. In a few moments the defendant came out, walking backwards, closely followed by the two Brittains, the son behind the father, and the father with an uplifted board over the defendant's person, and the latter with his gun in both hands, and as they reached the sidewalk, the said Samuel P. struck the defendant with the board, and at the same moment the gun fired. A second blow was given the defendant with the same instrument, and again the gun exploded.
"The gun was in the defendant's hands, pointing upwards. I cannot say if it was pointed towards Brittain, or any one else. The latter advanced out into the street, the defendant giving way before him, and while the fight was going on, the said J. W. Brittain discharged his pistol several times at the defendant. I then interposed and made them desist."
The defendant, examined on his own behalf, testified thus:
"The store-house had been rented by Samuel P. Brittain, and he and myself had an arrangement, that in case the prohibition law should cease to be operative, we would together open a bar in the front or store room, and meanwhile he consented to my keeping and selling corn and flour in that room. We both had keys to the room.
"In the morning of the day when the difficulty took place, Brittain had the corn and flour removed to the back room, and I had it replaced in the store-room, and fastened the entrance in front, by nailing strips across the doorway. On returning from a bird hunt, with a double-barrel shot-gun, I deposited it in the drug-store, where it was usually kept, though sometimes it was left in the billiard-room, where I slept. Brittain, the father, said he would go into the store-room, in three minutes, and thereupon passed over the street, and talked with his son, who came with him to the front door — passing by the drugstore, and taking a hatchet therefrom, which was used in forcing the door open. I went into the drug-store about the time that (942) Brittain crossed the street, and got my gun and came out. I forbade the breaking open the door, but it was done, and as Brittain entered, I followed him, but was immediately ordered out. I started to back out through the door, when Brittain drew over my head a piece of plank or scantling about 6 feet long and 1 1/4 by 2 1/2 inches thick, while his son drew a pistol, and both pursued me out of the door. I then turned round, hearing foot-steps hurrying behind, and *Page 783 
as I did so, received a blow on the head from the scantling, at the same time throwing up the gun to ward it off, but with no intention of firing it. The blow caused both barrels to explode, and the gun was broken. The son fired several times at me while this was going on. I went out of the drug-store with the gun, before Brittain entered it, and my sole purpose was to carry it to my room, and not to use it in any difficulty between us."
There was other evidence, but the foregoing versions of what transpired, are sufficient for a proper understanding of the instructions asked and given, in their application to the different aspects of the evidence, and to these the exceptions are confined.
The defendant's counsel requested the Court to charge the jury:
I. If the jury believe that the defendant, after being ordered out, did leave the store, and was followed by S. P. Brittain, then armed with a large piece of scantling held in a striking position, and the defendant attempted to ward off the blows given by Brittain, and in the attempt his gun went off, he would not be guilty.
II. That the fact that the defendant when ordered out, left the store and never fired his gun until stricken, when he had every opportunity to shoot before, should be conclusive to the minds of the jury, that he was acting with forbearance, and did not intend to use his gun, and that he would not be guilty.
The Court charged the jury substantially:
I. That if the testimony fully satisfied them that the defendant entered willingly into the fight, or wilfully provoked it, by language addressed to, or conduct towards Brittain, before being (943) followed out of the store, they would find him guilty, and proceed no further in their inquiry.
II. That in determining the precedent conduct and language of the defendant, in this view, they might consider the language and conduct of the defendant towards Brittain, when he forced open and entered the store door — his going after and getting his gun, and what then transpired, as the jury shall find the facts to be upon the evidence; and that if he did what is testified to, with no intention to engage in a fight when he followed Brittain into the store, he would not be guilty, if he used no more force afterwards, than was necessary in the progress of the difficulty.
III. If the defendant did not willingly engage in the fight, nor provoke it in the use of angry words in the store room, or by following Brittain as he entered, with his gun, after what he testified to as to his having forbidden the violent breaking into the door, he would not be guilty, although he fired his gun, voluntarily or otherwise, when his *Page 784 
assailant was pursuing him with the up-raised scantling, if he fired it under a reasonable apprehension of great bodily harm.
The statement of the evidence is protracted to an unusual extent, in order that the application of the propositions of law, on the basis of the appellant's exceptions, may be properly understood, in their application to the different aspects of the proofs.
There was a verdict of guilty, and the defendant appealed.
It will be observed, that the instructions asked, differ from those delivered, in the very material fact, that while the latter are full, and embrace the whole case as developed by the witnesses, the former are partial, presenting only such facts as occurred after the parties emerged from the store-room, ignoring what preceded, and may have been the cause of the difficulty, culminating in the fight afterwards. Most obviously, (944) the case was properly presented to the jury in the charge, and in as favorable a light for the defendant, as he could reasonably ask. The jury were directed to consider all the evidence, and ascertain from it, whether the defendant willingly entered into, or by his words and acts, provoked and brought about the violation of the public peace that ensued. If he did, he is criminally responsible for the consequences, notwithstanding his forbearing conduct when stricken and shot at. The test of guilt in such cases, is thus stated by BATTLE, J.: "If one person, by such abusive language towards another, as is calculated and intended to bring on a fight, induces that other to strike him, he is guilty, though he may be unable to return the blow." State v. Perry, 50 N.C. 9.
And this tendency and intention may be indicated by conduct as well as by words.
While the later conduct of the Brittains flagrante bello, was extremely violent, and out of all apparent proportion to the provocation offered, and that of the defendant was forbearing and defensive, after the parties came out of the store, there was evidence, in the beginning, of an aggressive purpose in the defendant, when, with gun in hand, he followed the Brittains as they entered the store of the father, the sequel of which was seen soon after, in the retreating of one, with face towards the others, his pursuing antagonists. The inference from this, it was for the jury to infer, and they find in accordance with the charge, that the defendant was a wilful participant in the act of violence from which he was the sufferer. *Page 785 
The evidence may be slight, but it was such as authorized the jury, in passing upon it, to arrive at their own conclusion as to the defendant's guilt. This is their province, and when there is any reasonable evidence to warrant the verdict, it must be allowed to stand, so far as this question is involved.
There is no error, and this will be certified, to the end that the Court below proceed to judgment.
No error. Affirmed.
Cited: S. v. Lancaster, 169 N.C. 284; S. v. Crisp, 170 N.C. 791;Supply Co. v. Windley, 176 N.C. 22; S. v. Baldwin, 184 N.C. 792; S. v.Robinson, 213 N.C. 280.