AYCOCK SUPPLY COMPANY v. D. M. WINDLEY, MELSON WINDLEY AND W. S. RIDDICK.

(Filed 11 September, 1918.)

1. **Partnership—Negotiable Instruments—Seal—Limitation of Actions.**

A promissory note, signed by one of a partnership, with a seal after his own name, in behalf of the firm, or as purchasing agent for the others, is a simple contract as to the other partners, though a contract under seal as to the one thus signing, and is barred as to the others by the three-year statute of limitations.

2. **Same—Ratification—Knowledge.**

In order for members of a partnership to subsequently ratify the action of one of them in giving the firm's note under seal, and repel the bar of the three-year statute of limitations, it is necessary to show that the acts relied on were with knowledge that the instrument was under seal.

3. **Same—Evidence—Trials.**

A note under seal is not necessary to secure a lien for agricultural advances; and where the evidence tends only to show a partnership for farming purposes, and that one of the partners gave the firm's note under seal, and the other farmed and applied the proceeds towards the payment of the note, it is not sufficient to show that the other partner acted with knowledge that the note was under seal, and repel the bar of the three-year statute of limitations as to him.

WALKER, J., dissenting; HOKE, J., concurring in dissenting opinion.

ACTION tried before *Bond, J.,* at February Term, 1918, of BEAUFORT, upon these issues:

1. Is the defendant W. S. Riddick indebted to plaintiff, and if so, in what amount? Answer: $252, with interest from November 1, 1910.

2. Is said defendant barred by statute of limitations, as alleged in the answer? Answer: No.

Judgment was rendered, by consent, against the defendants Daniel M. and Melson Windley.

After verdict the judge made the following order:

"The court, as a matter of law and not in the exercise of discretion, orders the verdict rendered in this case on the second issue set aside and

that case stand for trial as to said second issue. It does so because in its opinion it should have charged the jury that if they believed the evidence and found the facts to be as it tended to prove they should answer the second issue 'Yes.' "

To this plaintiff excepts and appeals.

*Small, MacLean, Bragaw & Rodman for plaintiff.*
*John H. Tooly, Harry McMullan for defendants.*

BROWN, J. The purpose of this action is to recover a personal judgment against defendant W. S. Riddick on a bond, under seal, reading as follows:

BELHAVEN, County of Beaufort, State of N. C.
$549.56.                     .                     Date, 13 May, 1910.

On or before the 1st day of November, 1910, with interest from maturity, payable annually, I promise to pay to the order of C. P. Aycock Supply Company five hundred and forty-nine and 56-100 dollars, for value·received, without offset, the homestead and all other exemptions are hereby waived as to the debt evidenced by this note.

Witness my hand and seal.               D. M. WINDLEY,     (SEAL)
               *Purchasing Agent for Self and W. S. Riddick*
                                        *and Melson Windley.*

Witness: O. C. SWINDELL.

This bond was given for farm supplies and advances and was secured by an agricultural lien of same date upon a crop of cotton, corn and potatoes grown during year 1910 on a farm cultivated by the three defendants as partners. The agricultural lien also secured the sum of $215.88, balance due by the copartnership to plaintiff on advances for year 1909. The defendant Riddick pleads the three years statute of limitation. This action was commenced 7 December, 1915.

It is too well settled to admit of dispute that where a written instrument is executed on behalf of a copartnership, and an individual partner signs the firm's name and affixes a seal to it, the instrument is the simple contract of the firm, although it is the sealed covenant of the individual partner who executed it. An action is barred on such instrument after three years from the time the cause of action arose as to the copartnership and the members thereof, except as to the individual who executed the instrument and affixed the seal. *Burwell v. Linthicum,* 100 N. C., 147.

In *Fronebarger v. Henry,* 51 N. C., 548, *Judge Ruffin* declares the rule of the common law to be that one partner cannot bind another by deed by virtue of his authority as partner merely, and that such instru-

ment, under seal, becomes the deed of the executing party alone. The subject is fully and learnedly discussed by *Judge Battle* in *Fisher v. Pender,* 52 N. C., 483.

The learned counsel for plaintiff seeks to avoid the effect of this established principle by attempting to show the defendant Riddick ratified the act of Windley in executing a sealed instrument executed by a member of the firm, and when so adopted and ratified it becomes the bond of each member as well as of the one who executed it. *Day v. Lafferty,* 4 Ark., 450. Notes to *Bank v. Johnson,* 14 Ann. Cases, 549, where the cases are collected. But these authorities also hold that "a partner cannot be charged with the ratification of a sealed note where it does not appear that he knew he was ratifying a *sealed* note."

In view of these authorities we agree with the learned judge that there is no sufficient evidence of an adoption and ratification of the instrument as a covenant under seal.

It is true that Windley testified that "Riddick knew about the execution of the papers and why they were executed for the firm," but there is no evidence that Riddick saw the papers or knew that a bond under seal had been given. He knew that an agricultural lien had been executed upon the crops for supplies and fertilizer, but as such an instrument does not require a seal, and as ordinary promissory notes require no seal, he did not know either from the character of the papers or from Windley's statement that a sealed instrument that would bind him for ten years had been executed. Neither do we think the evidence of payments shows a ratification of a sealed instrument. The evidence is that Riddick operated the farm during 1910 and "received and applied the crops that were made." The answer of Riddick admits "that W. S. Riddick paid plaintiff the sum of $513.51 on or about 1 January, 1911." A part of that money, it seems, plaintiff applied to the debt of 1909 and the balance of the bond sued on.

This payment is no evidence of ratification, because it does not appear that Riddick knew that the instrument was under seal before he made it, and, further, because the payment was one Riddick was compelled to make. He was undoubtedly bound by the agricultural lien, and the law itself compelled the application of the crops to the discharge of such lien. It is an indictable offense to willfully refuse to so apply them and otherwise dispose of them.

It may appear on the next trial that Riddick knew of the character of the instrument and that he adopted and ratified it as a sealed instrument, but the evidence on the last trial was not sufficient to establish it.

The order granting a new trial on second issue is

Affirmed.

WALKER, J., dissenting: We think that there is at least some evidence that W. S. Riddick knew of the sealed instruments—the note and the lien—for there were two of them signed and sealed alike. D. M. Windley, Melson Windley, and W. S. Riddick were parties in the business. D. M. Windley bought the fertilizers in 1910 and executed the papers under a seal to his own name as agent for the firm and one of the members of it. He then "turned the farm over to Riddick," who superintended it after that time, and when he received it, D. M. Windley told him that he had executed *"these"* papers for the firm—the note and the lien. There were no other papers answering the description but those now in question. Riddick paid money on the note. He further testified, "Mr. Riddick *knew about the execution of these* papers by me and why they were executed for the firm." Riddick paid money to a large amount that year on the note, and it would be strange if he did not require the production of the note and lien so that the proper credit should be entered on them, or at least on the note. This is the usual and almost universal way of doing such business by prudent men.

C. P. Aycock also testified that Riddick knew of the execution of the papers at the time he made the payment. There is no contention, and cannot be, that the witnesses were referring to any other papers than the note and lien. Riddick testified that he did not know that Windley had bought the guano and executed the papers for it. He contradicted the other witnesses, but this conflict in testimony was for the jury, and not for the court to settle. The jury could well draw the inference from what Windley and Aycock had testified, that Riddick had seen the papers, or that their contents, including the seal, had been called to his attention. When we speak of one having knowledge of the existence of a thing we thereby impute to him knowledge also of its nature and characteristics or of its component parts.

If the witnesses had said that he knew that *a* note and lien had been given, there might be room to contend that it was not evidence as to knowledge of a seal, but those are not the words, and definite reference was made to these very papers that had the seals annexed to the name of Windley.

We have sustained verdicts on less evidence more than once. Direct evidence is not required, but the matter may be left to fair inference by the jury. It would be strange and unusual that a man should conduct important operations for months under written instruments and not ask to see them or not know their contents. It would be a very loose way to transact business and should not be inferred unless upon clear proof of the fact. Juries may take such matters into consideration and draw their conclusions therefrom in connection with other facts. His denial that he had been told of the papers at all, in the face of the testi-

mony of two credible witnesses, was not favorable to him. Even though evidence be slight, if a fair inference can be drawn from it of the existence of the fact to be proved, it should go to the jury. *S. v. Fanning,* 94 N. C., 940. It is not insufficient because it is weak. *S. v. Kiger,* 115 N. C., 746. And those were criminal cases. But this case is taken out of the realm of conjecture by the definite reference to *"these papers"*— that is, those in controversy. There can be no doubt that the defendant justly owes the debt. The jury so found, and there was no exception by him.