On account of the importance of this case, we have not confined our examination of the record to the matters presented in the brief. We have examined the whole record and find

No error.

---

## STATE v. A. D. CANUP.

### (Filed 24 December, 1920.)

**1. Homicide—Murder—Evidence—Threats—Character.**

Upon a trial for a homicide where there is no evidence that the prisoner acted in self-defense, or was reasonably apprehensive that his life was in danger, or of receiving great bodily harm, but that he had shot the deceased in the back, and the transaction is not in doubt, evidence of the character of the deceased, or of threats made by him but not previously communicated to the prisoner, are properly excluded.

**2. Homicide—Murder—Intoxication—Evidence.**

Upon a trial for a homicide where the evidence shows that the prisoner shot the deceased when the latter was drunk, profane and boisterous, testimony under the facts of this case was not improperly excluded that the deceased was in the habit of drinking.

**3. Homicide—Murder—Evidence—Declarations.**

Where the prisoner is a policeman, and on his trial for the homicide of one whom he was assisting to arrest, by shooting him in the back with a pistol, his declarations, made some time before the homicide, as to his promptitude and readiness to shoot under such circumstances are properly admitted, with other evidence tending to show his guilt.

**4. Homicide—Murder— Character— Evidence— Cross-examination— Impeaching Evidence.**

The deceased was killed when being arrested by the prisoner, a policeman: *Held*, upon a trial for murder, the defense may cross-examine a witness who has testified to the good character of the deceased, upon matters tending to impeach his general character, but not as to specific instances, or as to how many men it had taken to arrest him on a former occasion, this being collateral to the issue being tried.

APPEAL by defendant from *Webb, J.,* at August Term, 1920, of CHEROKEE.

The defendant and John H. Cooper were tried for murder of Dan Sprinkle. The solicitor at the beginning of the trial announced that he would not ask for a verdict of murder in the first degree, and at the close of the testimony for the State took a *nol pros* as to Cooper.

Canup was a policeman in the town of Andrews. The deceased (Sprinkle) was drinking that night, and was boisterous and profane in the presence of Cooper, who was also a policeman, and the defendant.

They attempted to arrest Sprinkle, who resisted. With the aid of the witness Will Cook, and a man named McAfee, they got him down and put handcuffs on one arm. He begged to go home, and said he would come back and pay his fine. Cooper said: "Let him up." The deceased got up, knife in hand, making two licks at Cook with his knife. He then started for Cooper, who backing said: "Dan, I hate to kill you, but I am going to do it if you don't stop," and fired his pistol into the ground. At this juncture the wife of the deceased ran up and got between Sprinkle and Cooper, whose connection with the matter there ended.

Will Cook testified: "Sprinkle wasn't doing anything when Canup fired his first shot. He was standing with his back to us. Me and Canup were behind Sprinkle. I was about as close to Sprinkle as the table. The first shot hit him in the back. It staggered Sprinkle, and he turned around and went to fighting like Canup, and then Canup kept shooting. I didn't see Sprinkle do anything up to the time Canup shot him in the back the first time. I was standing there all the time. I said to Canup, 'Don't shoot him; don't shoot a drunk man; knock him down and put the handcuffs on him!'"

The shot that killed Sprinkle entered his back and came out at his collar bone. The defendant was found guilty of manslaughter, and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. N. Moody and Felix E. Alley for defendant.*

CLARK, C. J. Exceptions 1 and 2, to the exclusion of threats made by the deceased against the officers, Cooper and Canup. The judge excluded the evidence of these threats because not communicated to Canup.

In *S. v. Blackwell,* 162 N. C., 672, it is said: "As a general rule, evidence of the character of the deceased is not relevant to the issue in a trial for homicide, and consequently it is not permissible to show the general reputation as a dangerous or violent man; but when there is evidence showing, or tending to show, that the prisoner acted in self-defense, under a reasonable apprehension that his life was in danger, or that he was in danger of great bodily harm, evidence of the character of the deceased, as a violent and dangerous man, is admissible, provided the prisoner at the time of the homicide knew of such character, or the nature of the transaction is in doubt."

The same rule applies to threats. *S. v. Hines,* 179 N. C., 758, and cases there cited. Moreover, in this case, according to the evidence, the

deceased was not fighting when Canup, from behind, fired the first shot, which caused the death of the deceased.

The doctrine, as laid down in *S. v. Turpin,* 77 N. C., 473, and in *S. v. Baldwin,* 155 N. C., 494, stating the cases in which the proof of uncommunicated threats are permissible, does not apply in this case, for there were no other threats, which had been communicated which this testimony would have tended to corroborate; the evidence of the transactions was not circumstantial, but direct, and the character of the transaction was not in doubt.

Exception No. 3. It was not error to exclude evidence that the deceased was in the habit of drinking. The evidence was uncontradicted that he was drunk, boisterous, and profane that night. Exception No. 4. It was not error to admit the declaration of the defendant, made some weeks before the homicide as to his general attitude in regard to shooting, while on the police force, that "he would go ahead and the first thing he would do he would shoot somebody and learn them how it was." He said he would not take any chances himself. The jury was entitled to this evidence as showing that the defendant intended to be quick in using a deadly weapon in making arrests.

Exception No. 5. The witnesses for the State testified that the character of the deceased was good. The defense asked this witness, "Do you know how many men it took to arrest him at Sylva when he was drunk?" This question was properly excluded. It was competent in cross-examination to ask questions tending to impeach general character, but not as to particular matters as this would raise innumerable collateral issues. *S. v. Holly,* 155 N. C., 485, and citations thereto in Anno. Ed.

The assignment of errors in the charge is upon the ground that the charge as a whole is argumentative and equivalent to the expression of opinion by the court, but we do not think this objection is sustained by a perusal of the charge.

No error.