## STATE v. HARLEY BALDWIN.

### (Filed 20 December, 1922.)

**1. Homicide — Evidence — Reputation—Character of Deceased—Appeal and Error.**

The evidence upon the material and determinative facts in this trial of a homicide tended to show no self-defense or excuse: *Held,* the trial judge properly excluded the answers to questions on defendant's cross-examination of the State's witness for the purpose of showing the general reputation of the deceased for shooting and cutting men when he was under the influence of whiskey, or his general reputation for gambling, or his reputation for carrying a pistol, under the authority of *S. v. Canup,* 180 N. C., 739.

**2. Instructions—Contentions—Appeal and Error—Objections and Exceptions.**

Where a party objects to the statement of the judge of his contentions as being incorrect, he must do so in time to afford the judge a fair opportunity to correct it, and an exception after verdict is too late to be considered on appeal.

**3. Homicide—Self-defense—Evidence—Appeal and Error.**

An exception is untenable, upon the trial for a homicide, that the judge failed to charge the jury upon the principles of self-defense, when it appears that the prisoner entered willingly and aggressively into the fight that resulted in the death, and thus continued therein until he had killed the deceased, under the decision in the case of *S. v. Evans,* 177 N. C., 564, and other cases, also cited in the opinion of the Court.

**4. Instructions—Requests for Special Instructions—General Charge—Appeal and Error.**

The refusal of the judge to give special requests for instruction is not erroneous when it appears that he has substantially done so in his own language in the general charge to the jury.

**5. Homicide—Manslaughter—Evidence—Verdict—Appeal and Error.**

Where, upon the trial for a homicide, it appears that the prisoner provoked a fight with the deceased, entered willingly, and continued unlawfully therein, if the death had not resulted the prisoner would have been guilty of a misdmeanor, and, where death has resulted, a verdict convicting him of manslaughter will not be disturbed.

APPEAL by defendant from *Brock, J.,* at April Term, 1922, of MACON.

The defendant was convicted of manslaughter. The State's evidence tended to show that on 10 September, 1921, the defendant, Harley Baldwin, the deceased, Aus Wright, Bill Baldwin, father of Harley, and. Dick Wright were engaged in a game of. cards, about two hundred yards below Nantahala Bridge. There was a dispute between Harley and his. father, Bill, on one side, and Aus Wright and Dick on the other, as to which pair had won the game.

After this had continued for some time, Aus Wright, the deceased, said, "I want my money," and Harley, the defendant, told him he would not get his money, and then jumped up and threw his hand in his right breeches front pocket. When Harley did this, the deceased, Aus Wright, told him, "You have the ups on me. You have a gun and I have not one, but we will walk down to the road and let the boys strip us, and I will whip you fair." Harley then told Wright that he would not do it, but Bill Baldwin started up, saying "Let me get him," and went towards Aus opening his knife. The other parties present then interfered. Dick Wright took Harley off and up the hill about eight steps, whereas the witness, Craig Steppe, with Aus Wright, remained standing where the fuss first occurred. Aus Wright, the deceased, then went to the place where his coat was lying, about six feet off, pulled a pistol out of his right coat pocket, and before releasing it with his hand, he broke it down, and then finding it empty, got cartridges out of his pockets and put five shells in the pistol. Then the defendant Harley and the deceased, Aus, both came walking towards each other, when the following occurred:

Aus said: "Harley, I have always treated you right, and I have loaned you money today and will again," and Harley said, "I have always treated you right," and Aus said, "You took my money when you ought not to have done that," and Harley told him that was a damned lie, and they had a few words which the witness did not remember; and then Aus walked around and took his position on this side of the witness (indicating), and said, "You have had the ups on me today, but you have not got them now," and they both began shooting at that instant, and there was not over a second's difference in the shots of the guns. Both men were wounded, Aus Wright fatally, dying soon after receiving the wound.

The prisoner appealed from the judgment of the court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. Frank Ray, R. D. Sisk, and Johnston & Horn for defendant.*

WALKER, J. The defendant's counsel in their brief discuss only exceptions 7, 8, 9, 11, 13, 14, and 15.

Exceptions 7, 8, and 9 will be considered together. The State, in rebuttal to evidence that the deceased, Aus Wright, had the reputation of being a dangerous and violent man, introduced witnesses who testified that he had no such reputation. The defendant's counsel, cross-examining these witnesses, asked them if Aus Wright did not have a general reputation for shooting men and cutting them while he was under the

influence of whiskey. Again, if Aus Wright did not have a general reputation of gambling. Again, if he did not have a reputation for carrying a pistol. His Honor excluded the answers to these questions. This ruling of the court, it seems, is supported, upon the facts as they appear in the record, by *S. v. Canup,* 180 N. C., 739. That case, it would seem, sufficiently answers the objections of the defendant covered by these three assignments of error, but we may just as well refer also to *S. v. Holly,* 155 N. C., 485; *S. v. Blackwell,* 162 N. C., 672; *S. v. Turpin,* 77 N. C., 473; *S. v. Hines,* 179 N. C., 758, which also fully answer the objections. The transaction here considered upon the material and determinative facts showed no self-defense or excuse for the homicide, nor was the evidence circumstantial, or the nature of the transaction in doubt. It was a plain and unmistakable case, at least, of manslaughter. The defendant was not only willing to fight, but eager for the fray, and there was some evidence of murder in the second degree, if not in the first, but the State did not ask for a conviction of murder in the first degree, but insisted only upon a verdict of murder in the second degree or on one for manslaughter, and the jury mercifully reduced the grade of the homicide to manslaughter.

Exception 11. His Honor was stating the defendant's contention, in which he included a sentence in parentheses, as follows: "(And that then the first quarrel took place, they both used bad language, calling each other damned liars and other epithets.)". If this was a misconception by his Honor of defendant's contention, the time and place to have called it to his attention was then. The defendant could not lie by and except to this sentence for the first time in making out the case on appeal.

Exception 13 was to the portion of the judge's charge in which he is reciting a contention of the State, and in the condition of the present record, this could not be successfully assigned as error.

We have so often said that the statement of contentions must, if deemed objectionable, be excepted to promptly, or in due and proper time, so that, if erroneously stated, they may be corrected by the court. If this is not done, any objection in that respect will be considered as waived. We refer to a few of the most recent decisions upon this question: *S. v. Kincaid,* 183 N. C., 709; *S. v. Montgomery,* 183 N. C., 747; *S. v. Winder,* 183 N. C., 777; *S. v. Sheffield,* 183 N. C., 783.

Exception 14 was taken to a portion of the judge's charge. This, however, seems to be sustained by the authorities, *S. v. Kennedy,* 169 N. C., 326; *S. v. Crisp,* 170 N. C., 785; *S. v. Evans,* 177 N. C., 564, as to the right of self-defense when the prisoner either unlawfully started the fight or willingly and wrongfully entered into it.

The other assignments, except one, need not be considered, as the rulings upon which they are based, if erroneous, were nothing more than harmless, but we will consider one exception which rests principally upon the charge of the court.

Exception 15 was taken to the alleged refusal of the judge to give certain special instructions asked of him by the defendant's counsel, but his Honor did give them, so far as they were correct, in his general charge.

The prisoner entered into this fight not only willingly, but unlawfully, and it may be further said that he went into it even aggressively, if not with a predetermined and definite purpose to kill his adversary, premeditatedly and deliberately formed beforehand. His was an inexcusable and unlawful act from the beginning. He started in the wrong, and steadily and vigorously prosecuted his evil design.

The facts bring this case within the principle of *S. v. Kennedy,* 169 N. C., 326; *S. v. Crisp,* 170 N. C., 785; *S. v. Garland,* 138 N. C., 675; *S. v. Baldwin,* 155 N. C., 494; *S. v. Pollard,* 168 N. C., 116-119. See, also, *S. v. Robertson,* 166 N. C., 356; *S. v. Yates,* 155 N. C., 450; *S. v. Brittain,* 89 N. C., 481.

. It was said in *S. v. Crisp,* 170 N. C., 790-791: "A defendant, prosecuted for homicide in a difficulty which he has himself wrongfully provoked, may not maintain the position of self-defense unless at a time prior to the killing he had quitted the combat within the meaning of the law, as declared and approved by the recent case of *S. v. Kennedy,* 169 N. C., 326, and other like cases. In some of the decisions on the subject it has been stated as a very satisfactory test that this right of perfect self-defense will be denied in cases where, if a homicide had not occurred, a defendant would be guilty of a misdemeanor involving a breach of the peace by reason of the manner in which he had provoked or entered into a fight. Under our decisions such a position would exist:

. "*a.* Whenever one has wrongfully assaulted another or committed a battery upon him.

. "*b.* When one has provoked a present difficulty by language or conduct towards another that is calculated and intended to bring it about. *S. v. Shields,* 110 N. C., 497; *S. v. Fanning,* 94 N. C., 940; *S. v. Perry,* 50 N. C., 9. And, in this connection, it is properly held that language may have varying significance from difference of time and circumstances, and the question is very generally for the determination of the jury. *S. v. Rowe,* 155 N. C., 436.

. "*c.* Where one had wrongfully committed an affray, an unlawful and mutual fighting together in a public place, the more recent ruling being

to the effect that the 'public place,' formerly considered an essential, need be no longer specified or proved.  *S. v. Griffin,* 125 N. C., 692.

"And when there is relevant testimony, it has come to be considered the correct and sufficient definition of an unlawful affray or breach of the peace when one has 'entered into a fight willingly' in the sense of voluntarily and without lawful excuse.  *S. v. Harrell,* 107 N. C., 944. Extending and applying these principles to prosecutions for homicide, it has been repeatedly held in this State that where this element of guilt is present, and one has slain another under the circumstances indicated, the offender may not successfully maintain the position of perfect self-defense, unless he is able to show, as stated, that at a time prior to the killing he quitted the combat and signified such fact to his adversary."

It is further said in *S. v. Crisp, supra:*  "If one takes life, though in defense of his own life, in a quarrel which he himself has commenced with intent to take life or inflict serious bodily harm, the jeopardy in which he has been placed by the act of his adversary constitutes no defense whatever, but he is guilty of murder.  But, if he commenced the quarrel with no intent to take life or inflict grievous bodily harm, then he is not acquitted of all responsibility for the affray which arose from his own act, but his offense is reduced from murder to manslaughter."

The jury has evidently found, construing the charge of the court in connection with the evidence and the verdict, that the prisoner not only entered into the fight willingly, but that he provoked it by language calculated to cause the difficulty, or an attack upon him, or to bring about an affray.  If death had not ensued, he would have been guilty of a misdemeanor for engaging in an unlawful affray or assault and battery. In any reasonable view, therefore, he was guilty of manslaughter.

There is no reversible error to be found in the record, and it will be so certified.

No error.