## STATE v. EDWARD EVANS.

(Filed 25 June, 1927.)

**1. Homicide—Evidence—Instructions—Self-Defense — Appeal and Error —Harmless Error.**

Where the trial judge has correctly instructed the jury upon the prisoner's right to defend himself upon evidence in his own behalf and *per contra,* tending to show that though he willingly entered into the fight he had committed the act later when suddenly it was made necessary to protect his life or himself from great bodily harm, an isolated expression excepted to will be considered with the connected subject-matter in which it was placed in the charge, and the excerpt, though objectionable in itself, will not be held as reversible.

**2. Criminal Law—Involuntary Manslaughter—Instructions—Appeal and Error.**

Where the evidence upon a trial for a homicide tends to show that in a fight between the defendant and deceased, willingly entered into by the former, the prisoner intentionally shot the deceased with a gun and killed him, and *per contra* that the deceased had taken the gun away from the prisoner, and while in the deceased's possession it was accidentally discharged by the act of the deceased and killed him, a verdict of involuntary manslaughter will be upheld on appeal, upon the facts of this case, under an instruction to the jury that "involuntary manslaughter is where death results unintentionally from an unlawful act negligently done," and the instruction is otherwise correct.

**3. Criminal Law—Negligence—Actions.**

Negligence, in order to be criminal, must be of a higher degree than that required to be actionable or sounding in damages in a civil action.

CRIMINAL ACTION, tried before *Cranmer, J.,* at January Term, 1927, of PITT.

The defendant was tried upon a bill of indictment charging him with the murder of Leland Stancill.   The jury found the defendant "guilty

of involuntary manslaughter." Upon the verdict the defendant was sentenced by the court to a term of two years in the State's prison, from which judgment the defendant appealed.

The evidence tended to show that the deceased, Leland Stancill, had rented the down-stairs of the residence of the defendant's mother for a period of three years and was living in the house and engaged in cultivating the land; that the deceased "had possession of all the buildings except the upstairs of the house." Upon the premises was a garage, which was just large enough for one car. The deceased owned a Ford touring car, which he had been keeping in this garage. Some time prior to the killing the defendant bought a Chrysler. In June, 1926, the prisoner came to the house and put his Chrysler in the garage. Soon thereafter the deceased came in his car and proceeded to push the defendant's car out of the garage. Thereupon the defendant went out to the garage and put his Chrysler back in the garage before the deceased could place his Ford car therein. The deceased then went off to his father's house and came back to the garage with his brothers, Wilford and Robert, and a neighbor named Ola Briley. When the deceased went for reënforcements the defendant also got in his car and went to a neighbor's house and secured a relative named Don Evans. When the deceased and his brothers returned to the scene of action the defendant went out to the garage and stood with his back to his automobile. Thereupon the deceased, Leland Stancill, alighted from his automobile, took out a shot gun and advanced toward the defendant and said: "I am going to move your car." Whereupon the defendant answered: "You will have to move me first." The evidence for the State tended to show that as Leland Stancill started in the garage the defendant hit him in the mouth, and thereupon the defendant grabbed the gun, got possession of it, pulling the gun away from the deceased and firing the same at the deceased and killing him. Defendant further struck the deceased after he had been shot and had him down on the ground choking him when one of the brothers of the deceased undertook to pull the defendant off the deceased. While engaged in this struggle on the ground, the defendant's half brother, a small boy, fired a rifle into the crowd, killing the brother of the deceased.

The defendant contended that he had as much right to use the garage as the deceased, and that he did not fire the gun, but that deceased struck at him while holding the gun by the barrel and the stock thereof struck a part of the garage, causing the gun to fire.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*F. G. James & Son and Albion Dunn for defendant.*

BROGDEN, J. The material exceptions in the case are based upon instructions given by the trial judge to the jury.

Exception No. 13 is to the following instruction: "Also, in self-defense, more force must not be used than necessary under the circumstances, and if excessive force is used the prisoner will be guilty of manslaughter." This is an excerpt from an instruction, which is as follows: "One is permitted, gentlemen of the jury, to fight in self-defense; he might whenever it is necessary for him to do so in order to avoid death or great bodily harm; he may also do so when it is not actually necessary if he believes it to be necessary and he has a reasonable ground for the belief; but whether his ground be reasonable is a matter for the jury and not for the prisoner.

I further instruct you the right of self-defense rests upon the necessity, real or apparent, and cannot be exercised if there be a reasonable opportunity to retreat or avoid the difficulty, but if the assault in which the killing be brought about by violence and the circumstances are such that a retreat would be dangerous, he is not required even to retreat. (Also, in self-defense, more force must not be used than necessary under the circumstances, and if excessive force is used the prisoner will be guilty of manslaughter.)"

This instruction, considered in its entirety and in the setting in which it occurs, contains no reversible error and is supported by many decisions of this Court. *S. v. Goode,* 130 N. C., 651; *S. v. Cox,* 153 N. C., 638; *S. v. Robinson,* 188 N. C., 784.

The fourteenth exception is to the following charge of the court:

"I further instruct you that a person cannot invoke the doctrine of self-defense if he enters a fight willingly, unless and until he abandons the combat and his adversary has notice that he has abandoned the combat."

The defendant complains that this instruction does not take into consideration the fact that in all cases of self-defense a defendant must fight willingly, but no legal guilt is attached unless at the same time he is fighting wrongfully; or, in other words, if he fought willingly but rightfully, in his own self-defense, using no excessive force, that he would not be guilty of a crime. In support of this contention the defendant relies upon the cases of *S. v. Baldwin,* 155 N. C., 494, and *S. v. Pollard,* 168 N. C., 116. Both of these cases were distinguished in *S. v. Wentz,* 176 N. C., 745, in which exception was taken to the following instruction: "Or, if you find from the evidence that there was a difficulty between them, and that the prisoner entered into the fight willingly." *Walker, J.,* delivering the opinion of the Court, said: "Before giving the instruction, to which this exception is taken, the court very

fully and clearly charged the jury as to murder, manslaughter, and self-defense, and especially with strict reference to the different aspects of evidence in the case, and its application to the several views presented, and this takes it out of the principle as laid down in *S. v. Baldwin,* 155 N. C., 494, and *S. v. Pollard,* 168 N. C., 116."

Construing the entire charge, we think it sufficiently appears that the expression "if he enters the fight willingly" was used in the sense of entering into the difficulty voluntarily, aggressively, and without legal excuse, and must have been so understood by the jury. *S. v. Harrell,* 107 N. C., 944; *S. v. Crisp,* 170 N. C., 785; *S. v. Baldwin,* 184 N. C., 789.

The seventeenth exception is based upon the following instruction:

"Involuntary manslaughter, gentlemen, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to a felony, or from a lawful act negligently done." This instruction is almost in the exact language of Wharton's Criminal Law, 11 ed., Vol. I, sec. 426. The first part of the instruction was quoted with approval by *Stacy, C. J.,* in *S. v. Whaley,* 191 N. C., p. 391; but the addition of the words "or from a lawful act negligently done" is not in strict accordance with the rule as recognized and applied in this State. In *S. v. Tankersly,* 172 N. C., 955, *Hoke, J.,* said: "But all of the authorities are agreed that in order to hold one a criminal, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue; quoting with approval the definition given in 1 McLean's Criminal Law, sec. 350, as follows: "A negligence which will render unintentional homicide criminal is such carelessness or recklessness as is incompatible with the proper regard for human life." In *S. v. Whaley, supra,* it is further held: "But the culpable negligence of the defendant, and not an independent, intervening, sole proximate cause, must have produced the death."

The jury returned a verdict of "guilty of involuntary manslaughter." Under the evidence contained in the record, in order to convict, the jury must have found that the defendant was engaged in an unlawful act at the time of the killing. The evidence for the State tended to show that the defendant took the gun from the deceased and shot him. The evidence of the defendant was: "I know he hit me across the shoulder and struck the garage; he must have held the gun by the muzzle, for the stock to hit the face of the garage; this caused the gun to fire. I heard it hit, and immediately the explosion which came as almost one." The theory of the defense was that the defendant did not have his hand upon the gun at the time it fired, but that when the deceased undertook to strike him with the stock of the gun the stock struck the garage, causing

the gun to fire. Hence, the deceased came to his death by his own act and not by any act, negligent or otherwise, of the defendant.

It is apparent, therefore, that the jury accepted the State's theory and version of the killing. For this reason the error in the instruction, we think, is not of such weight as to warrant a new trial.

No error.