STATE OF NORTH CAROLINA v. WILLIAM EARL SANDERS, ALIAS SMOKEY JOE

No. 97

(Filed 17 August 1981)

**1. Criminal Law § 75.1— unlawful arrest—subsequent incriminating statement— admissibility**

Defendant's incriminating in-custody statement was not inadmissible as the fruit of his original unlawful arrest or pursuant to G.S. 15A-974 where the statement was not the result of the original unlawful arrest but had its origin in and was the result of a subsequent lawful arrest for a murder to which the statement related.

**2. Criminal Law § 75.1— in-custody statement—no violation of Posse Comitatus Act**

Defendant's incriminating in-custody statement was not inadmissible on the ground that it was obtained in violation of the Posse Comitatus Act, 18 U.S.C. § 1385, since there was no violation of the Act where military officers did not execute civilian law but patrolled a city street for the purpose of removing military personnel from situations potentially involving breach of civil law and assisted the police department in returning apprehended military personnel to Fort Bragg, and since a violation of the Act would not call for invocation of the exclusionary rule.

**3. Arrest and Bail § 3; Criminal Law § 169.2— refusal to strike testimony—subsequent jury instructions**

In this prosecution for the murder of a military policeman, the trial court did not err in refusing to strike the testimony of a military policeman that defendant was placed in "protective custody" and in failing to instruct the jury at the time of objection that there was no basis in the law for one to be taken into protective custody where the court in six separate instances in its final charge instructed the jury that defendant's arrest was unlawful.

**4. Criminal Law § 102.11— jury argument—personal belief by prosecutor—absence of prejudice**

In this prosecution for murder of a military policeman, defendant was not prejudiced by the prosecutor's ambiguous jury argument that "[w]e wouldn't be trying this case today if that [to beat up defendant] had been their intent," even if the statement is viewed as indicating a personal belief by the prosecutor as to defendant's guilt and the credibility of the testimony in violation of DR 7-106(C), since there was no reasonable possibility of a different result had the statement not been uttered.

**5. Criminal Law § 102.3— improper jury argument cured by instruction**

In this prosecution of defendant for the murder of a military policeman while defendant was in a holding cell, the prosecutor's improper jury argument which was not supported by the evidence that the victim and another military policeman entered the holding cell in order to protect persons therein confined was cured when the court instructed the jury to disregard such statement.

**6. Criminal Law § 113.1— court's statement of evidence supported by testimony**

　　In this prosecution of defendant for the murder of a military policeman while defendant was in a holding cell, the testimony supported the trial court's instruction that there was evidence tending to show that defendant swung at the victim before being kicked by a second military policeman.

**7. Homicide § 28.3— right to kill in self-defense—voluntarily entering fight by abusive language—instructions**

　　In this prosecution of defendant for the murder of a military policeman while defendant was in a holding cell after having been illegally arrested, the trial court's instruction, dealing with the right to kill in self-defense, that "one enters a fight voluntarily if he uses toward his opponent such abusive language which considering all of the circumstances is calculated and intended to bring on a fight, and if a person precipitates an altercation or a fight with the intent to provoke a deadly assault by the victim in order that he might kill him the subsequent killing of the victim in response to the attack is murder" was a correct statement of the law and was supported by the evidence in this case.

**8. Homicide § 28.3— use of force against unlawful arrest—instructions**

　　In this prosecution of defendant for the murder of a military policeman while defendant was in a holding cell after he had been unlawfully arrested, the trial court did not err in failing to charge the jury that regardless of the force used to effectuate the unlawful arrest, defendant was entitled to use deadly force if such was required to prevent the arrest or to free himself from unlawful confinement, since the victim of an unlawful arrest is not *ipso facto* entitled to kill or to use deadly force against the person attempting the arrest, and the court's instructions correctly explained to the jury the law regarding defendant's use of both non-deadly and deadly force in the context of an unlawful arrest.

　　Justice MEYER did not participate in the consideration and decision of this case.

BEFORE *Judge John Martin,* presiding at the 7 April 1980 Criminal Session of Cumberland Superior Court, and a jury, defendant was found not guilty of assault with a deadly weapon inflicting serious bodily injury and guilty of murder in the second degree. Upon a sentence of life imprisonment on the second degree murder conviction defendant appeals of right pursuant to G.S. 7A-27(a). This case was docketed and argued as No. 124, Fall Term 1980.

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Special Deputy Attorney General, for the State.*

*Mary Ann Tally, Public Defender, for defendant appellant.*

EXUM, Justice.

This is the third time this case has been before us. In both the first and second appeals we found prejudicial error and granted defendant new trials. *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979); *State v. Sanders*, 295 N.C. 361, 245 S.E. 2d 674 (1978).

In this appeal defendant brings forth assignments of error relating to: failure of the trial court to suppress defendant's incriminating statement, certain evidentiary rulings, portions of the prosecutor's argument to the jury, failure of the trial judge adequately to summarize the evidence in his charge to the jury, portions of the trial judge's substantive instructions to the jury, denial of defendant's motion for mistrial, and denial of defendant's motions to set the verdict aside and to order a new trial. After careful examination of each assignment we conclude that defendant's trial was free from prejudicial error.

The state's evidence tends to show the following: On 16 October 1976 Fayetteville Police Officer Wayne Alsup, accompanied by military policemen Sergeant Charles Terry and Sergeant Willard Barber, unlawfully[1] arrested defendant as he walked down Hay Street in Fayetteville. Defendant was handcuffed, searched and his military identification card seized. The officers informed him that he was not going to be charged with the commission of any offense but was being held in "protective custody" pursuant to which he would be transported to the Law Enforcement Center and then to his unit at Fort Bragg. Upon arrival at the Law Enforcement Center defendant was placed in a holding cell. While so confined he verbally abused law enforcement personnel and failed to comply with repeated requests to be quiet.

Sergeant Lambert, a military policeman assigned to assist the local police department in returning apprehended military personnel to Fort Bragg, approached the holding cell and reminded defendant that he was not going to be charged by the civilian authorities. Defendant reached through the bars and slapped Lambert in the face, whereupon Lambert and Terry, both unarmed, entered the cell in order to handcuff defendant and to

---

1. The trial court at defendant's first trial and we on defendant's first appeal so concluded.

charge him with the military offense of slapping a non-commissioned officer. Defendant retreated to the toilet area of the cell and motioned to the military officers to come in; he told them to "bring the deputies, that he'd kick all of our asses and kill us all." When Lambert and Terry reached the toilet area defendant swung at Lambert. Terry delivered a karate kick to defendant's stomach and attempted to pin his arms. Defendant, before being subdued by other officers, produced a knife and stabbed Terry in the arms and back and Lambert in the back, abdomen and lower chest. Lambert died shortly thereafter from the stab wound in his back.

Defendant did not testify. Terry Singleton, a military specialist assigned to assist Sergeant Lambert, testified on defendant's behalf that "the demeanor of the officers at the time that they entered [the] cell . . . was hostile."

I

After being charged with the murder of Sergeant Lambert and the felonious assault upon Sergeant Terry, defendant made a statement, later reduced to writing and signed by him, which in part provided, "I saw a knife on the floor and picked it up. . . . I reached up and grabbed one of [the officers] and pulled him to me and stuck him and stuck him. I was just swinging the knife. I think two got cut." The trial court, after a *voir dire* hearing at which defendant presented no evidence, concluded that there was probable cause for defendant's arrest on charges of murder and felonious assault, that defendant was advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436 (1966), and that defendant "intentionally, intelligently, understandingly and voluntarily waived said rights and thereafter freely and voluntarily made an in-custody statement . . . ."

[1] Defendant first assigns as error the trial court's failure to suppress his incriminating statement. He contends the statement was (1) the fruit of the original unlawful arrest on Hay Street (2) obtained in violation of G.S. 15A-501 and (3) obtained in violation of the Posse Comitatus Act, 18 U.S.C. § 1385 (1976). We find no merit in any of these contentions.

On defendant's first appeal this Court, relying primarily on *Brown v. Illinois,* 422 U.S. 590 (1975), expressly rejected defendant's contention that his statement, made after a lawful arrest

for the murder of Sergeant Lambert, must be suppressed as the fruit of the original unlawful arrest. *State v. Sanders, supra,* 295 N.C. at 370-72, 245 S.E. 2d at 681-82. Defendant's contention that a different result is suggested by *Dunaway v. New York,* 442 U.S. 200 (1979), decided since our earlier determination on this point, is without merit. In *Dunaway* the Supreme Court reiterated principles set forth in *Brown* and concluded, "[t]he situation in this case is virtually a replica of the situation in *Brown.*" 442 U.S. at 218. We are in full agreement with our prior determination made after full consideration of the issue that "defendant's statement was sufficiently attenuated from the unlawful arrest such that it was not obtained by undue exploitation of the Fourth Amendment violation and was properly admissible in evidence." 295 N.C. at 372, 245 S.E. 2d at 682.

Defendant's contention that his statement was obtained in violation of G.S. 15A-501[2] and thus must be suppressed pursuant to G.S. 15A-974 is for the same reason without merit. General Statute 15A-974 in part provides that "evidence must be suppressed if . . . . (2) It is obtained *as a result of* a substantial violation of the provisions of this Chapter." (Emphasis supplied.) The thrust of our original decision was that defendant's statement was not the result of the original unlawful arrest; it had, instead,

2. G.S. 15A-501 provides:

"*Police processing and duties upon arrest generally.* — Upon the arrest of a person, with or without a warrant, but not necessarily in the order hereinafter listed, a law-enforcement officer:

(1) Must inform the person arrested of the charge against him or the cause for his arrest.

(2) Must, with respect to any person arrested without a warrant and, for purpose of setting bail, with respect to any person arrested upon a warrant or order for arrest, take the person arrested before a judicial official without unnecessary delay.

(3) May, prior to taking the person before a judicial officer, take the person arrested to some other place if the person so requests.

(4) May, prior to taking the person before a judicial officer, take the person arrested to some other place if such action is reasonably necessary for the purpose of having that person identified.

(5) Must without unnecessary delay advise the person arrested of his right to communicate with counsel and friends and must allow him reasonable time and reasonable opportunity to do so."

its origin in and was the result of the lawful arrest for the Lambert murder to which the statement related. *State v. Sanders, supra,* 295 N.C. at 370-72, 245 S.E. 2d at 681-82.

**[2]** Defendant contends finally that suppression of his statement is required by the Posse Comitatus Act, 18 U.S.C. § 1385 (1976), which provides:

"§ 1385. *Use of Army and Air Force as posse comitatus*

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both."

The purpose of the Act, as noted in *State v. Nelson,* 298 N.C. 573, 260 S.E. 2d 629 (1979), is to preclude direct active use of federal troops in aid of execution of civilian laws. Here there was no violation of the Act. The Fayetteville Police Department did not use military policemen Barber and Terry to execute civilian law; instead, these officers patrolled Hay Street for the purpose of removing military personnel from situations potentially involving breach of civil law. Similarly, military policeman Lambert's duty was not to execute civilian law but to assist the police department in returning apprehended military personnel to Fort Bragg. "[T]hose situations where an act performed primarily for the purpose of insuring the accomplishment of the mission of the armed forces incidentally enhances the enforcement of civilian law do not violate the statute." *State v. Nelson, supra,* 298 N.C. at 585, 260 S.E. 2d at 639, *quoting* Furman, *Restrictions Upon Use of the Army Imposed by the Posse Comitatus Act,* 7 Mil. L. Rev. 85, 128 (1960).

Further, a violation of the Act does not call for invocation of the exclusionary rule. *United States v. Walden,* 490 F. 2d 372 (4th Cir. 1974), *cert. denied,* 416 U.S. 983 (1974); *State v. Nelson, supra.*

We conclude, then, that the trial court properly admitted defendant's statement.

## II

Defendant next assigns as error certain evidentiary rulings by the trial court. In assignments two, three and six defendant repeats evidentiary challenges earlier addressed and rejected by this Court.[3] We hold with our previous determinations.

[3] In assignment four defendant contends the trial court erred in refusing to strike Sergeant Barber's testimony that defendant was placed in "protective custody" and in failing to instruct the jury that "there is no such thing as protective custody." The testimony in question is as follows:

"Q. [By prosecuting attorney] Did you at any time tell Mr. Sanders why you were cuffing him, sir?

A. No, sir. I told him he was under protective custody.

MRS. TALLY: Objection. Move to strike. Ask that the jury be instructed that there is no such thing.

COURT: Overruled. Motion denied.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 15

When I was holding his arm up on the wall, I saw his wallet and his I.D. card which was taken out of it.

Q. Now, why did you cuff Mr. Sanders, sir?

A. It was normal procedure—

MRS. TALLY: Objection. Move to strike.

COURT: Overruled. Motion denied.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 16

---

3. Assignment two, wherein defendant challenges admission of Fayetteville police officer Richard Porter's testimony that after observing defendant argue with the "bouncer" of a Hay Street bar, he asked defendant to leave the area and advised Officer Alsup of the incident, is dealt with at 298 N.C. at 515, 259 S.E. 2d at 259-60. Assignment three, wherein defendant challenges admission of testimony concerning his appearance at the time of arrest, is dealt with at 298 N.C. at 515-16, 259 S.E. 2d at 260. Assignment six, wherein defendant challenges the trial court's refusal to permit defense witness Singleton to testify as to why he thought the military policemen entered the holding cell prior to the stabbing, is dealt with at 295 N.C. at 369-70, 245 S.E. 2d at 680-81. Defendant has abandoned assignment of error number five.

State v. Sanders

A. —for all protective custody subjects going back to Fort Bragg so we could safely transport them to the Law Enforcement Center then back to Fort Bragg.

MRS. TALLY: Objection. Move to strike. Ask the jury be instructed that again there is no such thing as protective custody.

COURT: Objection is overruled. Motion to strike is denied. The Court will instruct the jury as to the illegality of the arrest at the time jury instructions are given.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 17

. . . .

Q. Did you have any conversation with Mr. Sanders during this period of time, sir?

A. Yes, sir. I repeatedly told him he was just under protective custody, not under arrest, and being transported back to Fort Bragg.

MRS. TALLY: Move to strike.

COURT: Motion denied.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 18"

Defendant contends the challenged testimony was prejudicial in that it served "to convince [the jury] that the defendant was taken into custody under some lawful policy and that it was standard operating procedure." We disagree, and find no error in the trial court's refusal to strike this testimony or at the time of objection to charge that there is no basis in the law for one to be taken into protective custody. In its final charge the trial court emphatically and repeatedly instructed the jury that this initial arrest was unlawful. In its summation of the evidence the court stated:

"[M]embers of the jury, there is no basis in law for one to be taken into protective custody. That is not a legal arrest. Mr. Sanders' arrest was therefore plainly unlawful. At the time that he was taken into custody this constituted an illegal arrest. . . ."

Similarly, "[r]ecall again that I have instructed you that this . . . was an illegal arrest." Further:

> "I instruct you again that the defendant's initial arrest on Hay Street was unlawful, that his continued restraint in the holding cell was likewise unlawful and that any attempt by the officers to place him under further arrest for slapping Sgt. Lambert was likewise unlawful."

Indeed, in six separate instances in its final charge the trial court instructed the jury that the arrest was unlawful. It is inconceivable that after such instruction the jury thought otherwise. This assignment of error is overruled.

### III

Defendant assigns as error certain portions of the prosecutor's jury argument.

[4] In his seventh assignment defendant objects to a statement made by the prosecutor concerning why Sergeants Lambert and Terry entered the holding cell. Defendant's counsel argued to the jury that "they [Lambert and Terry] were hostile, they were angry . . . they went in there to beat the daylights out of William Sanders . . . to beat William Sanders to a pulp." The prosecutor responded by noting testimony that Lambert and Terry entered the cell not to fight with defendant but to handcuff him and to charge him with slapping a non-commissioned officer. The prosecutor noted that both were unarmed, that Terry in fact removed his nightstick prior to entering the cell, and that despite being slapped Lambert did not become angry. The prosecutor further stated, "Mrs. Tally said they went in there to beat him up. We wouldn't be trying this case today if that had been their intent." Defendant's objection to this statement was overruled. Defendant contends the trial court's failure to instruct the jury to disregard the statement was prejudicial error since the statement "indicated a personal belief on behalf of the prosecutor as to the defendant's guilt and a personal belief in the credibility of the testimony offered through the State's witnesses." This contention is meritless.

The statement, "[w]e wouldn't be trying this case today if that [to beat up defendant] had been their intent," is ambiguous. It is, as defendant contends, susceptible to the interpretation that

it reflects the prosecutor's belief as to the credibility of several of the state's witnesses and as to defendant's guilt generally. It is, however, capable of other equally likely interpretations. One is that if Lambert and Terry had in fact intended to beat up defendant they would have done so and disabled defendant prior to his stabbing them. Another is that if such had been their intent the state, realizing the difficulty of securing a conviction in the face of such police conduct, would not have brought charges.

In any event, even if we were to view the prosecutor's statement as being violative of his ethical responsibilities,[4] such a violation does not necessarily entitle defendant to a new trial. Ethical transgressions by trial counsel do not always constitute legal error, *see generally* Patterson, *A Preliminary Rationalization of the Law of Legal Ethics*, 57 N.C. L. Rev. 519 (1979), and legal error does not entitle a defendant to a new trial unless it is prejudicial. Here we are satisfied the statement in question did not prejudice defendant because there is no reasonable possibility of a different result had the statement not been uttered. *See* G.S. 15A-1443. However viewed, therefore, the statement does not entitle defendant to a new trial.

[5] In assignment eight defendant challenges the following portion of the prosecutor's argument:

> "(Those people in that cell with William Sanders had a right to be free from fear too and they went in to put those cuffs on so it wouldn't happen again, to try to find out his unit—)

---

4. Disciplinary Rule 7-106 of the North Carolina State Bar Code of Professional Responsibility in pertinent part provides:

"DR 7-106 Trial Conduct.

. . . .

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

.  .  .  .

(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

MRS. TALLY: — Objection.

COURT: Overruled.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 26

MR. DICKSON: (And hopefully take him into custody at that time for what they thought was an offense for slapping an NCO.)

MRS. TALLY: Objection.

COURT: Overruled.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 27

MR. DICKSON: (Not to beat him up. That was to protect themselves and other people in the cell.)

MRS. TALLY: Objection.

COURT: Sustained as to that. There is no evidence as to that, Mr. Dickson.

MRS. TALLY: Ask that the jury be instructed to disregard that.

COURT: Do not consider that portion of the argument, members of the jury."

Defendant contends this argument was prejudicial because it suggested that Terry and Lambert entered the holding cell for the purpose of protecting other persons therein confined. This contention is without merit.

Defendant correctly observes that no evidence was presented tending to show that Terry and Lambert entered the holding cell in order to protect persons therein confined. Several witnesses, however, testified that Terry and Lambert entered the cell to handcuff defendant and to charge him with slapping a non-commissioned officer. Thus the prosecutor's argument as to these reasons why Terry and Lambert entered the cell was supported by the evidence and defendant's objections thereto were properly overruled. The prosecutor then added an additional reason: "to protect . . . other people in the cell." This argument lacked evidentiary support and defendant's objection to it was sustained. The trial court then instructed the jury to disregard the offending statement. Thus the impropriety was cured and possible prejudice to defendant avoided. See State v. Martin, 294 N.C. 253, 240 S.E. 2d 415 (1978); State v. Covington, 290 N.C. 313, 226 S.E. 2d 629 (1976). This assignment of error is overruled.

IV

Defendant assigns as error certain portions of the trial court's final charge to the jury.

[6] In assignment nine defendant contends the following was a substantial misstatement of the evidence prejudicial to his claim of self-defense:

"(There was evidence tending to show that the defendant was motioning with his hands for them to come toward him; that he backed up to the partition at the toilet area of the holding cell and that Sgt. Lambert and Sgt. Terry were going toward him; that the defendant struck out at Sgt. Lambert, that Sgt. Lambert blocked the blow and Sgt. Terry then kicked the defendant in the stomach to knock the wind out of him.)

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 28"

Specifically, defendant contends there was no evidence that he swung at Sergeant Lambert before being kicked by Sergeant Terry.

The record, however, belies this contention. Sergeant Terry testified on direct examination that "I believe the defendant stepped up towards Sergeant Lambert, and they made contact, but I don't know how, sir." On cross-examination Terry said, "Sergeant Lambert and William Sanders never made any contact before I decided to kick William Sanders in the stomach. I think I'm getting — there was contact before I made the decision." Officer Carl Moore of the Fayetteville Police Department was near the holding cell at the time of the events in question. He testified on direct examination that "I heard the door open and I looked up and saw that Lambert and Terry were starting into the cell. I stood and watched. The defendant was backing up toward the back right portion of the holding cell . . . . As the defendant started backing up he was motioning for them to come on and get him. They went to the latrine area in the back righthand portion of the cell, but you can't see it after they go behind the partition. Deputy [Lonnie] Sanders approached the cell door and walked into the middle of the cell and at this time I seen the defendant struck out at Sergeant Lambert and Sergeant Lambert blocked the throw." On cross-examination Moore admitted that he did not see Sergeant Terry kick defendant. His testimony, however, indicates that this was because after defendant swung at Lambert the threesome disappeared behind the partition wall: "I could not

see behind the wall. The first thing that I saw was the defendant swing and Sergeant Lambert blocked, and then they disappeared behind the partition. They were not behind the wall yet, so I could see before they disappeared behind the partition."

It is clear then that the challenged portion of the trial court's evidentiary summation is in fact supported by the evidence. This assignment of error is overruled.

Defendant's tenth assignment, wherein he challenges a portion of the trial court's instruction on the elements of second degree murder, lacks even a suggestion of merit; we overrule it without extended discussion. Suffice it to say that the challenged instruction, taken directly from North Carolina Pattern Jury Instructions — Criminal § 206.30, is an accurate statement of the law. We decline defendant's invitation to consider the challenged instruction apart from the instructions which immediately precede it and apart from the charge as a whole.

[7] In his eleventh assignment defendant challenges the following instruction wherein the jury was charged that the killing would be excused on the grounds of self-defense if:

> "[T]hird . . . the defendant was not the aggressor. If the defendant voluntarily and without provocation entered the fight he was the aggressor. (One enters a fight voluntarily if he uses toward his opponent such abusive language which considering all of the circumstances is calculated and intended to bring on a fight, and if a person precipitates an altercation or a fight with the intent to provoke a deadly assault by the victim in order that he might kill him the subsequent killing of the victim in response to the attack is murder.)
>
> THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 30"

Defendant contends the charge was error in that "the jury was not allowed to consider whether the defendant's abusive language was used in lawful right to resist the illegal arrest and the continued illegal custody perpetrated upon him by the officers." We disagree.

Defendant was entitled to verbally demand cessation of his unlawful confinement. The trial court instructed the jury that defendant's arrest was unlawful and that while defendant could not resort to unnecessary force he "had the right to use such force in resisting the unlawful arrest as reasonably appeared to

him to be necessary to prevent the unlawful arrest and free himself from the illegal confinement." Given such instruction as to defendant's right to use force to resist unlawful arrest the jury undoubtedly realized that defendant had the right to verbally resist such an arrest. Defendant's contention to the contrary is without merit.

Further, the instruction here challenged deals not with defendant's right to resist, by force or otherwise, his unlawful arrest, but with his right to kill in self-defense. The instruction, taken substantially from North Carolina Pattern Jury Instructions — Criminal § 206.30, correctly indicates that the right to kill in self-defense may be forfeited by, among other things, provoking the fatal encounter. *State v. Spaulding*, 298 N.C. 149, 154, 257 S.E. 2d 391, 395 (1979); *State v. Jennings*, 276 N.C. 157, 163, 171 S.E. 2d 447, 451 (1970). "[I]f the defendant precipitated the altercation intending to provoke a deadly assault by the victim in order that he might kill him, his subsequent killing of the victim in response to the attack is murder." *State v. Sanders, supra*, 295 N.C. at 367, 245 S.E. 2d at 679. Thus while defendant had the right to resist the unlawful arrest by reasonable force and by words neither this right nor that of self-defense sanctions his provoking an encounter with intent to kill and killing pursuant to the encounter thus provoked.

The evidence is that while armed with a knife and confined in the holding cell defendant used language calculated to and which did in fact provoke the fatal encounter with Sergeant Lambert. Officer Newman of the Fayetteville Police Department testified that several weeks earlier defendant and Lambert had a confrontation after which defendant declared "nobody does this to me and if it is the last thing I ever do I will kill [you]." Defendant's statement reveals "I remembered him [Sergeant Lambert] from before, I asked him if he remembered me . . . . [He] said that he did remember me." Terry testified that when he removed the handcuffs defendant "could have said, 'Why don't you take these cuffs off me and fight me man-to-man.'" Also, "Sanders . . . started calling me names such as fatboy, honky, if you want to do something about it come and get me. . . . Sanders said . . . 'if you want to make me be quiet come in here and make be quiet or try and I will kill you. Bring your other buddies with you, bring the little fat honky and I will kill him, too.'" Terry testified further that when he and Lambert entered the cell defendant, while motioning for them to come in, said, "'come on in,' that he'd take us

all on. He told us to bring the deputies, that he will kick all of our asses and kill us all." Officer Moore testified that defendant said, "All you pigs come on over here and get me."

The instruction here challenged dealing with the right to kill in self-defense is, therefore, a correct statement of law and is supported by the evidence. Defendant's assignment of error thereto is overruled.

[8] Defendant's twelfth assignment may be summarily dealt with. As we understand his argument, defendant contends the trial court erred by failing to charge the jury that regardless of the force used to effectuate the unlawful arrest he was entitled to use deadly force if such was required to prevent the arrest or to free himself from unlawful confinement. This is not the law. Contrary to defendant's contention the victim of an unlawful arrest is not *ipso facto* entitled to kill or to use deadly force against the person attempting the arrest. As we noted in *State v. Sanders, supra,* 295 N.C. at 367, 245 S.E. 2d at 679:

> "A person indeed has the right to resist an unlawful arrest by the use of force, as in self-defense, to the extent that it *reasonably* appears necessary to prevent unlawful restraint of his liberty . . . . Nonetheless, *a killing done with malice and not in self-defense is murder, even though the person killed may have been seeking to effect an unlawful arrest upon the defendant.*" (Citations omitted.) (Emphasis supplied.)

The charge complained of adequately and correctly explained to the jury the law regarding defendant's use of both non-deadly and deadly force in the context of an unlawful arrest. This assignment of error is overruled.

V

Defendant in his final assignments contends that the alleged errors already addressed entitle him to a mistrial, to have the second degree murder conviction set aside, and to a new trial. For reasons discussed we conclude defendant received a fair trial free from prejudicial error; therefore, we overrule these assignments.

In defendant's trial we find

No error.

Justice MEYER did not participate in the consideration and decision of this case.