STATE OF NORTH CAROLINA v. PEGGY ANN HAIGHT

No. 8312SC354

(Filed 17 January 1984)

**1. Homicide § 21.9— voluntary manslaughter—sufficiency of evidence**

The trial court properly submitted the issue of voluntary manslaughter to the jury where the evidence tended to show that defendant was the sole proprietor of a bar in which the victim was a customer; that the victim got rowdy and defendant called a friend to come and help her close early; that as the bar was being closed, the victim started shouting at defendant and other patrons; that defendant started to swing her shotgun towards the victim, and it hit a friend on the leg and her friend "grabbed a hold of it"; that her friend pointed the gun at the victim and told him to let things cool down; that her friend put the gun in the car and started to walk around the back of the car to get into it; that defendant who, in the meanwhile had entered the front seat of the car, picked up the gun, stood up with one foot on the ground, raised the gun up and shot, hitting the victim in the chest; that the victim, although mortally wounded, chased the defendant as she ran backwards, caught her about the center of the street and began to beat defendant with his hands and fists until he fell down and died; and that defendant testified that the victim was wearing a jacket that covered his belt, and as he came toward the car he stuck his hand down in the shirt and defendant thought he was reaching for a weapon. From all the evidence it was reasonable for the jury to infer that the defendant killed the victim with a deadly weapon; that at the moment of pulling the trigger she acted in the heat of passion engendered by the victim's words and threatening behavior; and that she felt anger, rage, or furious resentment which rendered her mind incapable of cool reflection. The second theory of voluntary manslaughter, that the defendant was the aggressor without murderous intent, was supported by the fact that defendant had already gotten into her friend's automobile for the purpose of leaving the scene, that no overt act was being committed against her at the moment she picked up the gun in the car, that she had to partially step out of the car, and that she shot at close range. The third theory of voluntary manslaughter, the defendant's use of excessive force, also became a question for the jury to decide.

**2. Homicide § 28.3— instructions concerning defendant as aggressor and fact that victim unarmed—no plain error**

The trial court's instructions to the jury to consider whether the defendant was the aggressor and to consider whether the victim was in fact armed were not "plain error" since the evidence supported the charge. Further, no objection was made to the charge given.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 1 September 1982 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 17 November 1983.

*Attorney General Edmisten by Assistant Attorney General Lucien Capone, III for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender James H. Gold for defendant appellant.*

BRASWELL, Judge.

A single shot fired from a .410-gauge shotgun held in the hands of the defendant brought death to Winston McKenzie. The shooting occurred outside the Tee Pee Lounge on Gillespie Street in Fayetteville after it was closed for business, about 1:00 a.m. on 22 April 1982. From her conviction of voluntary manslaughter defendant appeals.

Since defendant admitted the shooting her brief states that the issue at trial was not who did it, but rather why it happened. She contended she acted in self-defense. The issues raised in the appeal question the sufficiency of the evidence to permit a reasonable jury to find the defendant guilty of voluntary manslaughter, and asks whether it was "plain error" for the judge to instruct the jury to consider whether the defendant was the aggressor and to consider whether McKenzie was in fact armed. We find no reversible error.

On the issue of the sufficiency of the evidence to support the conviction of voluntary manslaughter the scope of our review is established by *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731 (1930):

> The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

This case must be analyzed in conjunction with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed. 2d 126 (1979), and other modern cases. *State v. Earnhardt*, 307 N.C. 62, 66-67, fn. 1, 296 S.E. 2d 649, 652 (1982). In approaching this task "all of the evidence favorable to the State, whether competent or incompetent, must be deemed true; discrepancies and contradictions

therein are disregarded, and the State is entitled to every favorable inference of fact reasonably deduced from the evidence." *State v. Hageman*, 56 N.C. App. 274, 281, 289 S.E. 2d 89, 94, *affirmed*, 307 N.C. 1, 296 S.E. 2d 433 (1982).

As we look to the evidence we find it is undisputed that the defendant fired the shot from her .410-gauge shotgun, a deadly weapon, which killed McKenzie. The shot to the chest perforated the vena cava and the right lung, leading to death from bleeding and shock. To Officer Tiernan she said, "I shot him." The shot pattern indicated to an S.B.I. firearms expert that the .410-gauge shotgun was fired from a distance of three to eight feet from the victim.

Among the possible verdicts submitted to the jury were guilty of second-degree murder or voluntary manslaughter. Malice is an element of second-degree murder. It is the law that when a defendant admits, or when the State proves beyond a reasonable doubt that a killing is done with a deadly weapon, that a jury may infer that such killing was both unlawful and done with malice. The State's evidence did not reveal the issue of self-defense or heat of passion. The State's evidence was fully sufficient to take the case to the jury on second-degree murder.

It was through the defendant's evidence that the offense is shown to have been mitigated to voluntary manslaughter, which offense does not require malice, but which may be evidenced by a showing that the defendant acted in the heat of passion upon adequate provocation. In addition, "[v]oluntary manslaughter is . . . committed if the defendant kills in self-defense but uses excessive force under the circumstances or was the aggressor without murderous intent in bringing on the fight in which the killing took place." N.C.P.I. Crim. 206.10, p. 8 (Replacement June 1983).

[1] The sufficiency of the evidence for voluntary manslaughter is demonstrated through the testimony of three eyewitnesses offered by the defendant, and by the defendant herself, all taken in conjunction with the State's evidence.

Defendant was the sole proprietor of the Tee Pee Lounge. McKenzie came as a customer about 9:00 p.m. Donna Nobles, another customer, bought McKenzie two beers, and when she refused to buy him a third, was called a "fat bitch." Things then got

rowdy. Twice defendant called McKenzie down for harassing other customers. As defendant got concerned that McKenzie might cause more trouble, she called her close friend William McLaughlin to come and help her close early.

McLaughlin arrived about 1:00 a.m., and he and defendant closed the business. As McLaughlin was locking the front door, McKenzie grabbed Donna Nobles by the shoulders and shook her, saying words to the effect that she should tell her friends, "you been shook by a nigger." Nobles then got into the back seat of McLaughlin's automobile, parked a few feet from the front door of the Lounge.

McKenzie turned his verbal abuse to the defendant and was moving toward her as she and McLaughlin started to the car. Defendant was carrying her shotgun. McLaughlin was carrying the daily receipts and a paper bag with some beer. McKenzie referred to the shotgun as a "pea shooter," and commented "[t]hat ain't shit. I'll take it and ram it up your ass." He also crudely proposed to have sexual intercourse with the defendant's "gray-headed mammy." He was calling her "all kinds of bitches and things."

In the face of this background defendant started to swing her shotgun toward McKenzie. The gun hit McLaughlin on the leg, and he "grabbed a'hold of it." McLaughlin guessed she was going to shoot McKenzie "because he was calling her all kinds of bitches and things, you know." McLaughlin pointed the gun at McKenzie and told him to "[l]et's let things cool down and you go on home and we'll go on home." McKenzie pushed the gun away, told McLaughlin he was afraid to shoot and "didn't have nerve enough," calling McLaughlin's bluff. McLaughlin put the gun in the car and started to walk around the back of the car and get into it. The defendant who, in the meanwhile had entered the front seat of the car, picked up the gun, stood up with one foot on the ground, raised the gun up and shot, hitting McKenzie in the chest. After the shooting, McKenzie, although mortally wounded, chased the defendant as she ran backwards. He caught her about the center of the street and began to beat defendant with his hands and fists, and then fell down and died.

The defendant explained that McKenzie was wearing a jacket that covered his belt. As he came toward the car he stuck his hand down in his shirt. Defendant, thinking he was reaching for a

weapon, was afraid that the victim was going to harm her seriously and that in order to stop him she had to shoot him. No weapon was found afterwards.

From all the evidence we hold that it was reasonable for the jury to infer that the defendant killed McKenzie with a .410-gauge shotgun, a deadly weapon; that at the moment of pulling the trigger she acted in the heat of passion engendered by the victim's words and threatening behavior; and that she then felt anger, rage, or furious resentment which rendered her mind incapable of cool reflection. Her fear of a threatened assault also provided the basis for heat of passion action upon adequate provocation, which negated the malice of second-degree murder and supported the first theory of voluntary manslaughter. *See State v. Pope*, 24 N.C. App. 217, 222, 210 S.E. 2d 267, 271 (1974), *cert. denied,* 286 N.C. 419, 211 S.E. 2d 799 (1975); *State v. Spicer*, 50 N.C. App. 214, 273 S.E. 2d 521, *appeal dismissed,* 302 N.C. 401, 279 S.E. 2d 356 (1981).

The second theory of voluntary manslaughter, that the defendant was the aggressor without murderous intent, is supported by the fact that the defendant had already gotten into McLaughlin's automobile for the purpose of leaving the scene, that no overt act was being committed against her at the moment she picked up the gun in the car, that she had to partially step out of the car to shoot, and that she shot at close range. The victim was also unarmed. Proper instructions on self-defense were given, and it was for the jury to decide if she became the aggressor. Likewise, on the third theory of voluntary manslaughter, the defendant's use of excessive force, also became a question for the jury to decide. As an issue of fact, only the jury could properly determine the reasonableness of the force used. Under any of the three theories, the evidence was sufficient to permit a reasonable jury to find the defendant guilty of voluntary manslaughter.

[2] As to the second issue presented for review, we hold that the trial court's instructions to the jury to consider whether the defendant was the aggressor and to consider whether McKenzie was in fact armed were not "plain error." In fact, it was not any brand of error because the evidence supported the charge. Furthermore, we note that after the jury had been charged, but before their deliberations or verdict, the trial judge immediately stated outside the presence of the jury:

COURT: Gentlemen, you may now state your objections to errors, omissions, and misstatements, or raise any other matter concerning the instructions that you desire. Mr. Richardson.

MR. RICHARDSON: Your Honor, the State is content.

COURT: Mr. Brady. [The trial counsel, there being different counsel on appeal.]

MR. BRADY: *We have no objections, your Honor, at all.* [Emphasis added.]

The brief makes plain that the objection to the instruction concerning the aggressor is bottomed on an allegation of the insufficiency of the evidence. We merely point to the recital of the evidence earlier to demonstrate a sufficiency of facts to support the charge. In giving this instruction the judge was properly applying the law to the evidence. We observe that in neither *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), which opinion created the "plain error" rule as to Rule 10(b)(2), N.C. Rules of App. Proc., nor *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), which extended the "plain error" rule to encompass Rule 10(b)(1), N.C. Rules of App. Proc., did the Supreme Court find "plain error" to exist.

The challenge to the instruction that the jury was to consider whether the victim had a weapon is without merit. Although the evidence shows no weapon was found on or belonging to the victim, the defendant and another witness had testified to seeing McKenzie stick his hands down in his shirt. This fact inferentially caused the defendant to reasonably apprehend and fear an assault upon her. The instruction as given sufficiently covered the doctrine of apparent necessity in the overall instructions on self-defense. As further stated in *Odom, supra*, at 660-61, 300 S.E. 2d at 378, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."

No error.

Judges ARNOLD and HILL concur.