STATE OF NORTH CAROLINA v. KENNETH PRESLAR HAMILTON

No. 8520SC185

(Filed 29 October 1985)

1. **Criminal Law § 53.1— homicide—expert testimony as to cause of death—properly admitted**

   The State did not err in a prosecution for murder by admitting over a general objection the testimony of an assistant medical examiner regarding the cause of death. A general objection to specific opinion testimony will not suffice to preserve the question of the expert's qualifications in the absence of a special request to qualify the witness as an expert. Moreover, the witness's qualifications, position as assistant medical examiner, and testimony regarding the number of cases he had seen indicated sufficient expertise. G.S. 8C-1, R. Ev. 103(a), G.S. 130A-380.

2. **Homicide § 21.3— evidence that defendant caused death—sufficient**

   The evidence in a murder prosecution was sufficient to go to the jury on whether shots fired during an incident caused the victim's death where the victim was alive and active during the incident, received gunshot wounds to his upper body from extremely close range which made him go limp and fall to the sidewalk, an ambulance had to be summoned, and six hours later the victim was dead of gunshot wounds to his upper body roughly equal in number to the shots fired during the incident.

3. **Criminal Law §§ 33.4, 75.9— homicide—custodial statement—inflammatory—relevant to malice**

   The trial court did not err in the murder prosecution of an off-duty police officer for the killing of a black man by admitting custodial statements by the police officer that he believed the law in Anson County did not prevent the killing of blacks. The court found after a *voir dire* that no officer asked defendant any questions and that the statements were completely voluntary, the record contains no evidence of police conduct that the officers should have known was reasonably likely to elicit incriminating statements, defendant's statements clearly tended to prove malice, and while the statements may have tended to invoke emotional responses, G.S. 8C-1, R. Ev. 403, they were also relevant for the same reasons.

State v. Hamilton

**4. Homicide § 18.1— fight between victim and defendant—evidence of premeditation—sufficient**

There was sufficient evidence to submit murder to the jury in a case arising out of a struggle between an off-duty police officer and a man with a history of violent paranoid schizophrenia who approached the defendant's truck and began struggling with defendant where there was evidence of premeditation and deliberation in defendant's repeated statements that he was going to kill the victim, defendant's request for his second gun, defendant's immediate attempt to get his second gun, and defendant's unholstering of his first gun when physically separated from the victim, and where there was evidence of malice in defendant's volunteered statements following arrest and the fact that defendant fired his gun at close range until there were no bullets left.

**5. Homicide § 21.8— self-defense—evidence sufficient to go to jury**

There was sufficient evidence in a murder prosecution to go to the jury on the question of whether defendant was the aggressor and did not act in self-defense, and the court did not err by refusing to give a peremptory instruction for defendant on self-defense, where defendant and the victim had been physically separated by a law officer positioned between them and the original struggle broken up, defendant then repeated his intention to kill the victim, and defendant either pulled out a pistol or suddenly reached for a box where a second pistol was known by the victim to be located, provoking the fatal encounter.

**6. Criminal Law § 163— assignment of error to jury instruction—no plain error**

Defendant could not assign error to the court's instruction defining and applying the law of aggression in a murder prosecution where defendant did not specifically request any instructions on the subject other than a peremptory instruction and, in response to the court's inquiry following the charge, defendant indicated that he had no corrections or additions other than those previously requested. Moreover, there was no plain error in the court's instructions warranting a new trial. App. Rule 10(b)(2).

**7. Homicide § 30.3— murder—failure to instruct on involuntary manslaughter—no error**

The trial court did not err in a murder prosecution by refusing to instruct on involuntary manslaughter where defendant repeatedly stated his intention to kill the victim, defendant drew his gun after the two men were physically separated, defendant testified elsewhere that the victim fired the first shot, and the victim was shot a number of times at close range.

**8. Criminal Law § 163— homicide—assignment of error to instructions—no plain error**

Defendant did not properly raise on appeal in a murder case questions as to the jury instructions on excessive force, burden of proof, and accident where defendant did not present his questions separately and failed to object at trial; nevertheless, there was no plain error in the instructions.

APPEAL by defendant from *Helms, Judge.* Judgment entered 14 September 1984 in Superior Court, ANSON County. Heard in the Court of Appeals 25 September 1985.

Defendant was tried on an indictment, proper in form, for the murder of Roswell Smith. The State's evidence tended to show:

In the early morning of 4 May 1984 defendant, a white male off-duty police officer, parked his pickup truck near a convenience store in Morven, North Carolina. Smith, a black man with a history of severe, violent paranoid schizophrenia, customarily stood during the day near the spot where defendant parked. For reasons unknown, Smith came around to defendant's driver's side window, reached in, and began struggling with defendant. They struggled over defendant's gun which he had in a holster on the seat. The storekeeper and others came over and defendant shouted for them to get his other gun which was in a box. Defendant said he was going to kill Smith. Defendant repeated this statement in the ensuing minutes.

The storekeeper tried to separate the two men but could not. He called the sheriff's department and a deputy arrived shortly. Both men still held onto the holstered gun. The deputy asked them to let go of it, but neither one released the gun. The deputy wrestled with them and separated Smith from defendant, positioning himself in between. Defendant still had his gun.

At this point, one State's witness testified that defendant stepped out of his truck and pulled his gun out of its holster. He cocked the gun, repeating that he would kill Smith. Another State's witness testified that defendant reached for the box with the second gun in it as soon as the deputy got Smith away from him.

Smith jumped around the deputy, grabbed the gun being held by defendant and the two fell back into the truck, with the deputy on top of them trying to separate them. Shots went off. The deputy was hit in the face by something and ducked away. Smith received several gunshot wounds and died as a result.

Defendant's evidence tended to show that he had begged onlookers to help him while he was struggling with Smith, but no one did and that Smith attempted to shoot defendant with defendant's gun and fired first, after which defendant turned the gun on

Smith and fired until no bullets were left. Smith was very muscular and had an extensive history of violent behavior, including verbally abusing passing motorists and attempting to enter their stopped vehicles. Defendant also presented extensive evidence of his good character.

The jury was charged on murder in the first and second degree, voluntary manslaughter, and acquittal. Defendant requested, but did not receive, instructions on involuntary manslaughter. Upon a verdict of guilty of voluntary manslaughter, which carries a presumptive sentence of six years, the court sentenced defendant to four years. The court found in mitigation that defendant acted under strong provocation and that he was a person of good character or reputation. The court allowed defendant to post bond pending this appeal.

*Attorney General Thornburg, by Assistant Attorneys General Steven F. Bryant and Karen E. Long, for the State.*

*Henry T. Drake for defendant-appellant.*

EAGLES, Judge.

Defendant argues six questions. We have examined them carefully but have found no prejudicial error.

I

[1] The State presented an assistant State medical examiner who examined Smith's body. At the conclusion of the medical examiner's testimony on direct examination, the prosecutor asked his opinion as to the cause of Smith's death. Defendant entered a general objection, which was overruled, and is the basis for his first assignment of error.

We note initially that a general objection, if overruled, is ordinarily not effective on appeal. G.S. 8C-1, R. Ev. 103(a); 1 H. Brandis, N.C. Evidence Section 27 (1982). In the absence of a special request to qualify a witness as an expert, a general objection to specific opinion testimony will not suffice to preserve the question of the expert's qualifications, even on ultimate issues. *State v. Hunt*, 305 N.C. 238, 287 S.E. 2d 818 (1982). If the witness' evidence indicates that he is in fact qualified to give the challenged opinion, even a timely specific objection will not likely be sustained on appeal. *See Id.; State v. Hill*, 32 N.C. App. 261, 231 S.E. 2d 682 (1977). While the record does not contain an extensive review of this witness' qualifications, his position as assistant

medical examiner and his testimony regarding the number of other cases he had seen indicate sufficient expertise to allow us to conclude that the trial court did not err in admitting his opinion of the cause of death. *See* G.S. 130A-380.

[2] Defendant also attempts to argue under this assignment that the State failed to prove that any wounds received by Smith in this incident actually caused his death, implying that death may have resulted from other unknown causes. The State need not prove that the defendant's acts were the sole and immediate cause of death. *State v. Alford Jones,* 290 N.C. 292, 225 S.E. 2d 549 (1976) (intervening negligence no excuse); *State v. Luther,* 285 N.C. 570, 206 S.E. 2d 238 (1974) (assault precipitated heart attack). Further, the State need not exclude every other possible hypothesis inconsistent with defendant's guilt. *State v. Freddie Jones,* 303 N.C. 500, 279 S.E. 2d 835 (1981). Here the State's evidence showed that Smith was active and alive during the incident, that he received gunshot wounds to his upper body from extremely close range which made him go limp and fall to the sidewalk, that an ambulance had to be summoned, and that six hours later Smith was dead of gunshot wounds to his upper body roughly equal in number to the number of shots fired during the incident. We think this evidence sufficed to go to the jury on the issue of whether the shots fired during the incident caused Smith's death. We note in response to defendant's speculations on appeal about other possible causes of death, that it was not obligatory for the State to disprove every other conjectured cause of death. *Id.* The assignment is therefore overruled.

II

[3] Defendant was arrested in the afternoon following the incident. While he was being fingerprinted, but before his rights were read to him, defendant made several comments. At one point he said, "It's not against the law to kill a nigger in Anson County." Following *voir dire,* the court found as fact, *inter alia,* that no officer asked defendant any questions and that the statements were "completely voluntary." Defendant now assigns error to their admission.

Defendant made no exceptions to any of the findings of fact. Accordingly they are binding here. *State v. Colbert,* 65 N.C. App. 762, 310 S.E. 2d 145, *rev'd on other grounds,* 311 N.C. 283, 316

S.E. 2d 79 (1984). The findings of fact establish that the statements were entirely voluntary and that there was no constitutional barrier to their admission. Even if the findings were not conclusive, this record contains no evidence of police conduct that the officers should have known was reasonably likely to elicit the incriminating statements. *See Rhode Island v. Innis*, 446 U.S. 291, 64 L.Ed. 2d 297, 100 S.Ct. 1682 (1980); *State v. Ladd*, 308 N.C. 272, 302 S.E. 2d 164 (1983). The mere fact that defendant was in custody does not make his statements *ipso facto* inadmissible. There must be some interrogation. *Id.* Here, there was no interrogation. Defendant's constitutional arguments are without merit.

Defendant also attacks the admission of these statements on the grounds that their inflammatory effect outweighed their relevance. Evidence traditionally has been considered relevant in a criminal prosecution if it has "any logical tendency, however slight, to prove a fact in issue." 1 H. Brandis, N.C. Evidence Section 77 at 285 (1982). The new Rules of Evidence did not substantially alter this liberal definition of relevancy. G.S. 8C-1, R. Ev. 401. Malice is one of the elements of murder. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). Malice is *inter alia* a state of mind which prompts one person to take the life of another without just cause, excuse or justification. *State v. Love*, 296 N.C. 194, 250 S.E. 2d 220 (1978). Statements by defendant that he believed the law in Anson County did not prevent the killing of blacks clearly tended to prove malice.

Regardless of a statement's relevancy, the court retains discretionary authority to exclude it if its probative value is substantially outweighed by its unfairly inflammatory effect. G.S. 8C-1, R. Ev. 403; 1 H. Brandis, N.C. Evidence Section 80 (1982). Generally, however, courts have excluded such evidence only when it served exclusively to inflame. *See e.g., State v. Simpson*, 297 N.C. 399, 255 S.E. 2d 147 (1979) (murder case, error to admit evidence of unrelated sodomy). If the evidence is relevant, however, the *Simpson* opinion's logic does not apply. *See State v. Richards*, 294 N.C. 474, 242 S.E. 2d 844 (1978) (admitted evidence highly prejudicial for the same reason that it was relevant; no error). While the disputed evidence may have tended to evoke emotional responses, it was also highly relevant for the same reasons, as discussed above. The court did not abuse its discretion in refusing to exclude the statements. The assignment is overruled.

## III

Defendant's next argument combines three separate assignments of error, regarding (1) the denial of defendant's motion to dismiss and (2) the court's instructions on who was the aggressor. Defendant has ignored the mandate of Rules of Appellate Procedure that "[e]ach question shall be separately stated." App. R. 28(b)(5). Nevertheless, despite the Rule violation we address those aspects of this argument which are properly before us.

## A

[4] Whether there is sufficient evidence to go to the jury can be one of the most difficult questions a court faces in a criminal case. *State v. Bell,* 65 N.C. App. 234, 309 S.E. 2d 464 (1983), *aff'd,* 311 N.C. 299, 316 S.E. 2d 72 (1984) (per curiam). Upon a timely motion to dismiss, the evidence must be considered in the light most favorable to the State, with all favorable and reasonable intendments and inferences. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982). Once substantial evidence is before the jury, any conflicts and discrepancies are for the jury to resolve and do not supply basis for dismissal. *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789 (1971); *see State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235 (1972). This applies even where defendant presents no evidence. *Id.* If defendant does present evidence, it is disregarded on his motion to dismiss except to the extent that it is favorable to the State. *Earnhardt, supra.* In "borderline" or close cases, our courts have consistently expressed a preference for submitting issues to the jury, both in reliance on the common sense and fairness of the twelve and to avoid unnecessary appeals. *State v. Vestal,* 283 N.C. 249, 195 S.E. 2d 297, *cert. denied,* 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157 (1973); *State v. Holt,* 90 N.C. 749 (1884); *Cunningham v. Brown,* 62 N.C. App. 239, 302 S.E. 2d 822, *disc. rev. denied,* 308 N.C. 675, 304 S.E. 2d 754 (1983). With these considerations in mind, we conclude that the court properly denied defendant's motions to dismiss and submitted the case to the jury.

There was sufficient evidence of premeditation and deliberation in defendant's repeated statements that he was going to kill Smith, his requests for his second gun and in his immediate attempt to get his second gun or in unholstering his first gun when physically separated from Smith. *See State v. Potter,* 295 N.C. 126, 244 S.E. 2d 397 (1978). There was sufficient evidence of

malice in defendant's voluntary statement following arrest and the fact that he fired his gun several times at Smith at extremely close range (until there were no bullets left). *See State v. Fleming, supra.* Of the three elements of murder and voluntary manslaughter, *see Id.,* only the unlawfulness of the killing is seriously disputed here. Defendant's contention is that the killing was justified as a matter of law by self-defense and that all the evidence showed that Smith was at all times the aggressor.

## B

[5] A person who kills another is not guilty of murder if the killing was an act of self-defense. *State v. Deck,* 285 N.C. 209, 203 S.E. 2d 830 (1974). The right to kill another in self-defense may be forfeited not only by physical aggression on the accused's part but by conduct provoking the fatal encounter. *State v. Sanders,* 303 N.C. 608, 281 S.E. 2d 7, *cert. denied,* 454 U.S. 973, 70 L.Ed. 2d 392, 102 S.Ct. 523 (1981). In *Sanders,* defendant could properly be found the "aggressor" even though he was imprisoned, since defendant taunted the deceased jailer to enter his cell with vile names and verbal abuse. *See State v. Baldwin,* 184 N.C. 789, 114 S.E. 837 (1922) (defendant provoked fatal encounter with language calculated to start fight; jury could properly find him aggressor, even though deceased advanced on him with loaded pistol); *see also State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447 (1970) (analyzing circumstances under which adulterous conduct might affect right of self-defense). The fact that the deceased initiated physical contact does not automatically excuse aggressive conduct on defendant's part. *See State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750 (1973) (deceased lunged at defendant after defendant sought out deceased and approached him brandishing shotgun; no self-defense).

The State bears the burden of proving that defendant did not act in self-defense. *State v. Herbin,* 298 N.C. 441, 259 S.E. 2d 263 (1979). To survive a motion to dismiss, the State must therefore present sufficient substantial evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that defendant did not act in self-defense. *State v. Earnhardt, supra; Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed. 2d 560, 99 S.Ct. 2781, *reh'g denied,* 444 U.S. 890, 62 L.Ed. 2d 126, 100 S.Ct. 195 (1979).

Here there was evidence that defendant and Smith had been physically separated with a law enforcement officer positioned between them. The original struggle had been broken up and stopped. Defendant then repeated his intention to kill Smith· and either pulled out a pistol or suddenly reached for the box where a second pistol was known by the victim to be located, provoking the fatal encounter. This evidence sufficed to go to the jury on the question of whether defendant was the "aggressor." Defendant relies heavily on the evidence that Smith reached into his truck in the first instance and then jumped back in on top of him after the two had been separated. At best, this evidence presented a conflict in the State's evidence, which was for the jury to resolve. *State v. Bolin, supra.*

Our decision in *State v. Haight*, 66 N.C. App. 104, 310 S.E. 2d 795 (1984), supports this conclusion. There deceased roughed up one of defendant's companions, abused and threatened defendant, and seemed intent on a violent confrontation. As deceased came toward defendant, defendant fired the fatal shot. Even though mortally wounded, deceased then chased and assaulted defendant. In *Haight*, however, there was evidence that deceased had committed no overt act at the time the shot was fired. We held that there was sufficient evidence to go to the jury on the question whether or not defendant was the aggressor. *See also State v. McConnaughey*, 66 N.C. App. 92, 311 S.E. 2d 26 (1984) (similar facts and result). We likewise hold that in the instant case there was sufficient evidence to go to the jury.

C

Defendant requested an instruction "[t]hat the Court instruct the Jury that Ken Hamilton was not the aggressor, and that Smith was the aggressor." The court declined to give the requested instruction, which appears to be a peremptory instruction requiring the jury to accept as established a crucial and controverted fact. Peremptory instructions are only rarely proper in criminal cases. Only when uncontradicted evidence clearly establishes a fact beyond a reasonable doubt is a peremptory instruction appropriate. *State v. Bowen*, 67 N.C. App. 512, 313 S.E. 2d 196, *appeal dismissed*, 312 N.C. 79, 320 S.E. 2d 405 (1984) (per curiam). That was not the situation here and the court correctly refused to give the requested instruction.

D

[6] Defendant also argues under this assignment that the court's instructions defining and applying the law of aggression were erroneous. Defendant did not specifically request any instructions on the subject (other than the one discussed above), and in response to the court's inquiry following the charge he indicated that he had no corrections or additions other than those previously requested. Defendant therefore cannot assign error to the instructions given. App. R. 10(b)(2). We have reviewed the complained of instructions and do not find "plain error" warranting a new trial. *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

IV

[7] Defendant next assigns error to the court's refusal to instruct on involuntary manslaughter. The court must instruct on all substantial features of the case arising upon the evidence. *State v. Davis*, 66 N.C. App. 334, 311 S.E. 2d 311 (1984). Involuntary manslaugher is "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). Defendant grounds his contention on his testimony, otherwise unsupported, that Smith grabbed the gun and that it accidentally discharged during the struggle over it. We do not think this evidence sufficed to support an instruction on involuntary manslaughter, in view of defendant's repeatedly stated intention to kill Smith, his action in drawing the gun after the two men were physically separated, his testimony elsewhere that Smith fired the first shot, and the fact that Smith was shot a number of times at close range.

The appellate courts of this State have consistently held that it would be error to instruct on involuntary manslaughter on similar facts when the only evidence of accident has been oral assertions by the defendant, especially where the defense has relied on self-defense. *See State v. Ray*, 299 N.C. 151, 261 S.E. 2d 789 (1980) (self-defense raised; defendant admitted firing toward deceased but not trying to hit him); *State v. Redfern, supra* (defendant's acts naturally dangerous to human life); *State v. Robbins*, 309 N.C. 771, 309 S.E. 2d 188 (1983) (defendant and deceased scuffled; defendant had made threats, shot victim repeatedly); *State v.*

*Davis, supra* (intentional brandishing of knife naturally dangerous, fatal consequences in scuffle probable). Accordingly, we conclude that no error occurred here. We note that this Court recently held that involuntary manslaughter is not a lesser included offense of murder. *State v. Fournier*, 73 N.C. App. 465, 326 S.E. 2d 84 (1985).

### V

[8]  In his last two questions, defendant assigns error to various jury instructions on excessive force, burden of proof, and accident. In disregard of the rules, defendant has not presented his questions separately, App. R. 28(b)(5), and failed to object at trial to the errors now alleged. App. R. 10(b)(2). These questions are accordingly not properly before us. Nevertheless, we have reviewed the instructions and find no "plain error." *State v. Odom, supra.* These assignments are overruled.

### VI

For the foregoing reasons, we conclude that defendant has failed to show that he received other than a fair trial, free from prejudicial error.

No error.

Judges WHICHARD and COZORT concur.